# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Agustin Gonzalez, *et al.*, | ) |
| | ) No. 17 C 217 |
| Plaintiffs, | ) |
| | ) Judge Virginia M. Kendall |
| v. | ) |
| | ) |
| Sheriff Thomas J. Dart, *et al*. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This case arises out of the tragic death of Donna Moy Gonzalez while she was in the custody of Cook County Management System ("CCOMB"). Plaintiff, Ms. Gonzalez's widow, Agustin Gonzalez, filed his Complaint individually and as the Independent Administrator of the Estate of his late wife. Plaintiff named Sheriff Thomas Dart and Cook County among the Defendants. In Count II of the Complaint, Plaintiff brings a *Monell* claim against Sheriff Dart and Cook County under 42 U.S.C. § 1983 as well as supplemental state law claims against those Defendants: Count III, Wrongful Death pursuant to 745 ILCS 10/9-102 against Sheriff Dart and Cook County; Count IV, against Cook County for indemnification; Count V, for medical negligence against Cook County; and Count VI, against Cook County under the Illinois Survival Statute 755 ILCS 5/27-6. Sheriff Dart and Cook County now move to dismiss. For the following reasons, Sheriff Dart and Cook County's Motions are granted with respect to the § 1983 claims. Both Defendants' Motions are denied and / or are withdrawn with respect to the state law claims.

## BACKGROUND

In 2013, Donna Gonzalez had a stroke which partially paralyzed the left side of her body impairing her motor functions and her ability to walk. (Dkt. 1 ¶ 11.) In 2014, she was diagnosed with brain damage from the stroke which had caused a change in her personality. (*Id.* ¶ 13.) Subsequently, Ms. Gonzalez was arrested for harassing her physical therapist; she pled guilty and was incarcerated. (*Id.* ¶ 15–16.)

While incarcerated, Ms. Gonzalez fell three times between December 11, 2015 and December 15, 2015. (Dkt. 1 ¶¶ 21, 24–30.) Plaintiff alleges that after each of the first two falls, Ms. Gonzalez was "allowed to return to the general population with no change in care as a fall risk." (*Id.* ¶¶ 23, 25, 30.) Following the third fall, on December 16, 2015, Ms. Gonzalez was seen by Dr. Defuniak at Cermak Health Services. (*Id.* ¶ 32.) Dr. Defuniak ordered Lorazepam, Acetaminophen, Baclofen, and Enalapril, and gave Ms. Gonzalez a wheelchair. (*Id.* ¶ 32.)[1] On December 23, 2015, Ms. Gonzalez was seen again at Cermak and a plan was instated for her to attend eight sessions with an occupational therapist. (*Id.* ¶ 33.) She was also encouraged to notify nursing staff for transitions, such as needing to use the restroom; but, Plaintiff alleges that "[n]o instructions were given or plans for supervision[.]" (*Id.*) On January 2, 2016, Ms. Gonzalez was unattended and fell, sustaining a hematoma to her brain and putting her into a coma. She remained in the coma until she passed away on January 11, 2016. (*Id.* ¶ 34.) Plaintiff contends that Ms. Gonzalez should have been monitored, evaluated again after the December 23 appointment, been required to use a wheelchair at all times, and should have been transferred to a hospital for continuous monitoring. (*Id.* ¶ 36.)

---

[1] The allegations are not entirely consistent. Plaintiff alleges that Dr. Defuniak had Ms. Gonzalez in a wheel chair on December 16, 2015, but in the precedent paragraph alleges "From December 16, 2015 to January 1, 2016 Mrs. Gonzalez was allowed to use only a cane and walk unattended." (Dkt. 1 ¶¶ 31–32.)

Specifically pertaining to the Defendants who now move to dismiss, Plaintiff alleges that, Sheriff Dart and Cook County maintained a policy in which they "failed to train correctional officers and medical staff to properly provide adequate medical treatment to inmates especially those with organic brain damage and left-side paralysis constituting a fall risk." (Dkt. 1 ¶ 41.) Plaintiff further alleges that around the period of Ms. Gonzalez's falls, Defendants had notice of a widespread practice under which detainees with serious medical conditions were routinely denied access to proper or sufficient medication or medical attention. (*Id.* ¶ 55.) And at the time of her death, it was "extremely common" to observe detainees with symptoms of serious illness or injury who needed medical care but were routinely delayed, denied or ignored. (*Id.* ¶ 56.) Plaintiff goes on to allege that there is a widespread practice of failing to examine detainees when there has been a fall, refusing to provide 24-hour monitoring for fall risks, and providing detainees who are fall risks with appropriate safeguards. (*Id.* ¶ 57.) These practices are "so settled as to constitute de facto policy of the Sheriff and/or Cook County[.]" (*Id.* ¶ 59.) Plaintiff does not allege facts as to any instances in which another detainee was specifically denied treatment during that period or any other fall-risk detainees who were not provided adequate treatment.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted. To survive a 12(b)(6) motion, the complaint must provide enough factual information to state a claim for relief that is plausible on its face and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the 12(b)(6) stage, all of the "factual allegations contained in the complaint" must be "accepted as true." *Twombly*, 550 U.S. at 572. Furthermore, well-pled facts are viewed in the light most favorable to the plaintiff. *See Hatmaker v. Mem'l Med. Ctr.,* 619 F.3d 741, 743 (7th Cir. 2010). But "legal conclusions and conclusory allegations merely reciting the elements of a claim are not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

## DISCUSSION

### A. *Monell* Claims

To establish liability against the Defendant under *Monell*, Plaintiff must show that: (1) there was a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker; which (3) was the proximate cause of the injury. *See Ovadal v. City of Madison, Wisconsin*, 416 F.3d 531, 535 (7th Cir. 2005); *see also Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 306 (7th Cir. 2009) ("the premise behind a § 1983 action against a government body is 'the allegation that official policy is *responsible* for the deprivation of rights.'") (emphasis in original); *see also Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (to demonstrate liability for a harmful policy or practice, plaintiff must show defendant was "deliberately indifferent as to [the] known or obvious consequences.") Additionally, to state a claim for municipal liability under *Monell*, a plaintiff must allege "than an official policy or custom not only caused the constitutional violation, but was the moving force behind it." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (quotation omitted); *see also Thomas v. Cook County Sherriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2009) ("the premise behind a §1983 action against a

governmental body is the allegation that official policy is responsible for the deprivation of rights") (quotation omitted).

Plaintiff asserts his claim against Cook County and Sheriff Dart based on a widespread custom that led to Ms. Gonzalez's death. (Dkt. 36 at 3.). Under the "custom" form of *Monell* liability, a plaintiff must allege "more than one instance, or even three" incidents of the alleged constitutional violation in order to prove a custom exists. *Thomas*, 604 F.3d at 303 (citation omitted); *see also Gable,* 296 F.3d at 538 ("three incidents were too few to indicate that the City had a widespread custom of which policymakers had reason to be aware"); *see also Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (four incidents affecting the plaintiff not sufficient to show a "widespread unconstitutional practice").

Here, the Complaint alleges that Ms. Gonzalez fell four times and that the fourth fall resulted in her death. Plaintiff asserts that the Complaint is clear enough to show a pattern but that the extent of the pattern can only be brought out by discovery. (Dkt 36 at 3.) Plaintiff only cites to Ms. Gonzalez's experience but concludes that her experience is indicative of a wider custom. Generally, the existence of a policy is shown through application to several different individuals, although a policy may also be shown through repeated actions directed at one person so long as the repeated actions truly evince the existence of a policy. *Phelan v. Cook County*, 463 F.3d 773, 789–90 (7th Cir. 2006). Although she fell four times and alleges that Defendants did not respond appropriately, her circumstances are still too unique to evince the existence of a policy. For example, Plaintiff alleges that the policy involved a failure to provide medical treatment "to inmates especially those with organic brain damage and left-side paralysis constituting a fall risk." (Dkt. 1 ¶ 41.) There is no indication that the Defendants customarily fail to address this specific group of inmates, if such a group exists at all.

5

Plaintiff also cites to two distinguishable cases which demonstrate the insufficiency of Plaintiff's allegations. In *Dixon v. Cook County*, the plaintiff's claim relied primarily on Cook County's official policy with respect to medical records in the jail and argued that if all of the doctors involved in treating Dixon had access to records, there would not have been a delay in treatment. 819 F.3d 343 (7th Cir. 2016). Here, there are no allegations of an official policy that led to Ms. Gonzalez's death and no allegations of problems stemming from record keeping deficiencies. In *Davis v. Carter*, a detainee's wife was told by personnel that "Cook County don't work that fast" suggesting the delays her husband experienced in receiving methadone treatment for his drug withdrawal was customary. 452 F.3d 686, 693 (7th Cir. 2006). Defendants here did not make any similar statements that Ms. Gonzalez's experience represents a widespread custom. Plaintiff alleges, for example, that Cook County "refused to provide 24-hour monitoring for severe fall risks." (Dkt. 1 ¶ 57.) But there are no allegations of a specific instance in which she requested monitoring and was affirmatively refused, or that refusing monitoring to fall-risks was a common practice; instead, Plaintiff only alleges that Defendants were aware she had fallen and that they did not subsequently monitor her. In both *Dixon* and *Davis*, the *Monell* claims were based on more than conclusory allegations like those that comprise Plaintiff's Complaint.

Finally, Gonzalez's reliance on the 2008 findings from a U.S. Department of Justice investigation of healthcare practices to show deficiencies at the jail is inapposite. Ms. Gonzalez's falls occurred in late 2014 and 2015 and policies to correct the failures outlined in the DOJ report were implemented as early as 2009. *See Dixon*, 819 F.3d at 349. The report therefore does not support Plaintiff's allegation that it was "extremely common" to observe detainees who were ignored while in need of medical care. (Dkt. 1 ¶ 56.) Accordingly, Plaintiff

has not sufficiently pled a *Monell* claim and the § 1983 claims against Defendants Cook County and Sheriff Dart are dismissed.

    **B. State Law Claims**

Next, Sheriff Dart moves to dismiss Count III for wrongful death under 745 ILCS 10/9-102 based on statutory immunity as an official performing discretionary functions and acting within the scope of his duties under the Illinois Tort Immunity Act ("TIA"), 745 ILCS 10/2-202. Under the TIA, "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages … for which it or an employee while acting within the scope of his employment is liable[.]" 745 ILCS 10/9-102. However, "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. The statute defines "[w]ilful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1–210.

Immunity under the TIA operates as an affirmative defense, so Sheriff Dart "bear[s] the burden of properly raising and proving their immunity under the Act." *Salvi v. Vill. of Lake Zurich*, 66 N.E.3d 894, 908 (Ill. App. 2016).[2] Sheriff Dart asserts that "Plaintiff has the burden of proving that defendant's conduct was willful and wanton," (Dkt. 17 at p.7), but the Sheriff is incorrect to suggest that the burden is on Plaintiff at the pleading stage. The cases cited to by the Sheriff Dart occur at later stages in litigation. *See, e.g., Wade v. City of Chicago*, 364 Ill. App.3d 773, 789 (1st Dist. 2006) (motion for directed verdict at the end of jury trial); *see also Urban v. Village of Lincolnshire*, 272 Ill. App.3d 1087, 1094 (1st Dist. 1995) (motion for summary

---

[2]

judgment).³  Indeed, other courts have held that whether conduct "is sufficiently willful and wanton is ordinarily a question of fact for the jury and rarely should be ruled upon as a matter of law." *See, e.g., Liska v. Dart*, 60 F. Supp.3d 889, 906-907 (N.D. Ill. 2014) (citing (*Beal v. City of Chi.*, 2007 WL 1029364, at * 10 (N.D. Ill. Mar. 30, 2007)).  The one case Sheriff Dart relies on involving a motion to dismiss, *Doe v. Vill. of Arlington Heights*, is factually distinguishable. 782 F.3d 911, 920 (7th Cir. 2015).  In *Doe*, an officer encountered plaintiff, a young female, and three intoxicated males; the officer left plaintiff with the males and she was then sexually assaulted.  The plaintiff proposed that she was owed a duty of care under the "community caretaking" or "emergency aid" doctrines, but the court rejected these arguments and held that the officer did not owe a duty that vitiated his immunity.  *Id.* 921.  The one time encounter between an officer and a civilian is distinguishable from Ms. Gonzalez who was in Defendants' care and custody and had a serious medical issue that they were aware of.  Moreover, while there was no duty of care in *Doe*, there is a duty under the Eighth Amendment owed by a prison official to ensure 'reasonable safety.'  *Farmer v. Brennan*, 511 U.S. 825, 844 (1994); *see also Countryman v. Winnebago County*, 135 Ill. App. 3d 384, 391 (Ill. App. 1985) (county owed duty to "exercise ordinary and reasonable care for the preservation of their prisoner's health and life under the circumstances of the particular case.") (internal quotations omitted); *see also, e.g., Johnson v. United States, et al.*, 2016 WL 3387156, *10 (June 20, 2016) (Under Illinois law, jailers owe a duty to "keep [a prisoner] safely and to protect [her] from unnecessary harm[.]") (quoting *Dezort v. Village of Hinsdale*, 35 Ill. App.3d 703, 707 n.1 (Ill. App. 1976)).

---

³ It is altogether unclear why the Sheriff cites to *Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698 (7th Cir. 2014). Defendant Sheriff cites *Reeves* for the proposition that "Plaintiff has failed to provide any allegations rising to the level of willful and wanton." (Dkt. 17 p.7.)  But *Reeves* is an ADA failure to accommodate case that never mentions the willful and wanton standard.

Plaintiff does not explicitly plead "willful and wanton" conduct but sufficiently pleads facts that "show[] an utter indifference … for the safety of others[.]" 745 ILCS 10/1–210. There were three falls in a short period of time leading up to Ms. Gonzalez's death and yet there was no initiation to more closely monitor her movements. This is especially egregious given her serious medical condition which Plaintiff alleges all Defendants had notice of. While Plaintiff has not sufficiently alleged a widespread custom of failing to monitor fall risks, Plaintiff has pled enough facts to show that with respect to Ms. Gonzalez, Sheriff Dart's employees may have been "utterly indifferent" to her safety. Plaintiff specifically asks that any judgment for compensatory damages entered against the individual Defendant employees of Sheriff Dart must be paid by Sheriff Dart. To that extent, Defendant Dart is not immune and Count III for wrongful death remains.

In Cook County's Motion to Dismiss, the County initially moved to dismiss the state law medical negligence claim, Count V, based on Plaintiff's failure to provide a 622 Report and moved to dismiss the other state law claims as derivative of that claim. (Dkt. 22 p. 3–4.) Plaintiff has since filed a 622 report and is now in compliance with Section 735 ILCS 5/2-622. Therefore, as stated in its Reply brief, Cook County agrees to withdraw its motion that Plaintiff did not adequately plead a medical malpractice claim. (Dkt. 37 p. 2.) Because the Motion is withdrawn with respect to the medical negligence claim, these state law claims are no longer derivative of a failed claim and therefore those claims stand.

## CONCLUSION

For the reasons stated herein, the Court grants Cook County and Sheriff Darts' Motions to Dismiss Count II and denies the Motions to Dismiss Counts III, IV, and V. (Dkt. 17, 22.)

                                                                          _____
                                                                          Virginia M. Kendall
                                                                          United States District Court Judge
                                                                          Northern District of Illinois

Date: August 10, 2017